# IN THE COURT OF APPEALS OF TENNESSEE
## AT JACKSON
### February 16, 2021 Session

## STATE EX REL. JAMES FREDERICK ROBERTS v. ELIZABETH DALE CRAFTON

**Appeal from the Juvenile Court for Shelby County**
**No. W8928     Dan H. Michael, Judge**

_____

### No. W2019-01010-COA-R3-JV
_____

This appeal concerns a post-divorce child support matter. Elizabeth Dale Crafton ("Mother") sued James Frederick Roberts ("Father") for divorce. In 2007, the Circuit Court for Shelby County ("the Circuit Court") entered a final decree of divorce in the case. In 2008, the Circuit Court entered a permanent parenting plan concerning the parties' children. The Juvenile Court for Shelby County ("the Juvenile Court") later accepted jurisdiction for child support matters. Father went on to file a series of motions seeking to be relieved from paying for private school tuition. In 2019, the Juvenile Court entered an order denying Father relief and resolving all outstanding matters. Father appeals, arguing among other things that the original child support order is void as against public policy for failure to adhere to the Child Support Guidelines, and that the succeeding orders are void, as well. As the original child support order did not entirely relieve the parents of their duty to support and otherwise was jurisdictionally sound, we hold that it is not void. We affirm.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Juvenile Court Affirmed;
Case Remanded**

D. MICHAEL SWINEY, C.J., delivered the opinion of the court, in which J. STEVEN STAFFORD, P.J., W.S., and CARMA DENNIS MCGEE, J., joined.

James Frederick Roberts, pro se appellant.

Jason R. Ridenour, Memphis, Tennessee, for the appellee, Elizabeth Dale Crafton.

Herbert H. Slatery, III, Attorney General and Reporter, and Kristen Kyle-Castelli, Assistant Attorney General, for the appellee, the Tennessee Department of Human Services.

# OPINION

## Background

Our review of this long-running post-divorce child support matter begins with a review of its procedural history. In August 2007, the Circuit Court entered its final decree in Father and Mother's divorce proceedings. Two children were born of the parties' marriage—one born in December 1996, the other in April 2003. The final decree of divorce provided that "[i]n lieu of the payment of child support, the parties agree that [Father] shall share equally in the cost of private school." In April 2008, the Circuit Court entered a permanent parenting plan. As relevant, the plan provided:

> In lieu of the payment of child support, the parties agree that Father shall share equally in the cost of private school. When the children have reached the age where Christ Methodist School is no longer an option, the parties agree that the children will attend private school chosen by Mother. At that time, Father's obligation to pay his share of private school will cease. Any child support obligation will be limited to the amount of support pursuant to the Child Support Guidelines without consideration of this tuition amount paid by Mother.

Uncovered reasonable and necessary medical expenses were divided equally. In August 2009, the Circuit Court entered a consent order regarding child support. In February 2012, the Department of Human Services ("DHS") filed a notice of Title IV-D services in the Circuit Court seeking to transfer all matters concerning modification and enforcement of child support to the Juvenile Court.

In August 2012, Father filed his Motion to Modify Child Support and Void Previous Judgment as it Relates to Child Support in the Juvenile Court. In his motion, Father stated that "the original parenting plan relating to child support fails to comply with TN Law and is void." Father requested that he "not continue to be held to the original child support order and forced to pay for a private school education that clearly both parties would not be able to finance even if they were still together." In August 2012, DHS filed a petition in the Juvenile Court to establish arrears and/or modify order. In December 2012, DHS filed an amended petition clarifying that the initial parenting plan did not order either party to pay child support, but rather the parties agreed to pay private school tuition in lieu of child support.

In February 2013, a hearing was held before the Juvenile Court Magistrate. In April 2013, the Juvenile Court entered an order confirming the February 2013 findings and recommendations of the Magistrate. The findings reflected that the Juvenile Court

administratively accepted jurisdiction of the Circuit Court's final decree of divorce for purposes of enforcement and modification of child support. The order modified the August 2009 consent order regarding child support and found that Father owed $725 per month in private school tuition. Father's $725 payment was offset by Mother's $232 payment. Father's child support obligation was set at $493 per month. The Juvenile Court stated that the child support and credit worksheet appeared to be correct. Citing Father's failure to appeal the Circuit Court child support orders from 2007, 2008, and 2009, the Juvenile Court denied Father's motion to modify child support and void the previous judgment. The Juvenile Court continued the case for establishment of arrears.

In November 2013, the Magistrate heard the outstanding arrears issue. The Magistrate found that it was in the children's best interest for them to continue attending private school. Mother was found to owe $1,830.44 in arrears and Father $12,278.62. The parents were required to share, pro rata, the cost of extracurricular activities, reasonable and necessary school supplies, and tutoring as agreed by both parents.

In February 2014, the Juvenile Court entered an order adopting the Magistrate's latest findings and recommendations. In February 2015, Father, pro se at this stage, filed his Motion to Vacate Order and sought to set aside the February 22, 2013 and November 6, 2013 orders pursuant to Tenn. R. Civ. P. 60.01, 60.02 (1), (2), (3), & (5) and Title II of the Americans with Disabilities Act. Father asserted, in part:

> 8. That on December 5, 2011 Mother and her attorneys … admitted that checks to the private school from Mother's parents Buzz and Barbara Dale Crafton WERE GIFTS.
> 9. That on February 22nd 2013, Mother and her attorneys changed their story to fit their needs in front of a different Judge stating that the gifts to the private school were now promissory loans.
>
> ***
>
> 14. That on November 6, 2013 the record shows the Honorable Magistrate Kessler stating legal advice to an impaired individual, Father, that Father would need to take his original Motion to Vacate back before Circuit Court.
> 15. That Father listened to the Honorable Magistrate Kessler causing Father to surrender his God-given constitutional right to appeal.

In June 2015, Father filed his Amended Motion to Vacate Order and/or Modify. In this motion, Father asserted that "the Circuit Court order used by the Juvenile Court in reaching it's decisions and the record standing alone proves the Circuit Court order is ***void ab initio*** meaning Father is still PRP of the remaining minor child … and has/had a

constitutional right to place the child in public school." (Emphasis in original). In October 2015, the Magistrate denied Father's motion to vacate and continued matters related to modification. In January 2016, Father filed his Emergency Ex Parte Petition for Dismissal, Remand Back to Circuit Court and for Interlocutory Appeal in the Juvenile Court. The Magistrate entered an order regarding this latest petition in which it found, in part:

13. That the father states he does not understand and is confused by the legal procedures, yet he continues to file numerous pleadings, memoranda of law, and to represent himself.
14. That the father continues to file frivolous pleadings, notices, exhibit lists, and offers of proof that have no relevance to the substantive legal issues before the Court and appear to be nothing more than attempts at ex parte communications.

\*\*\*

16. That the father's Emergency Ex Parte Petition for Dismissal, Remand Back to Circuit Court and for Interlocutory Appeal filed on or about January 12, 2016, is denied for the following reasons: (1) there is no emergency; (2) all parties were present and the issues contained therein were not heard ex parte; (3) that the matter of child support is properly before this Court pursuant to Appendix 2 of the Local Rules of Court for the Thirtieth Judicial District; and (4) the interlocutory appeal is denied as it was not filed within 30 days of entry of any order; the father will suffer no irreparable injury; and it would prolong the duration and expense of litigation needlessly.

The Juvenile Court ratified these findings and recommendations. In February 2016, the Juvenile Court entered an order dismissing Father's petition for rehearing regarding his motions to vacate/modify. In March 2016, another hearing was held before the Magistrate. The Magistrate recommended modification of child support, requiring DHS to apply Mother's payment to Father's arrearage. The Magistrate found, in part:

2. That the Court finds the petitioner/father to be willfully and/or voluntarily unemployed or underemployed pursuant to Rule 1240-2-4-.04(3)(a)(2)(ii)(II). Tennessee Child Support Guidelines; therefore, the Court imputed the gross monthly income for the petitioner in the amount of $2,247.00.

\*\*\*

4. That the previous order of the Court entered on February 22, 2013 be modified to decrease child support payments from $493.00 per month, paid from the petitioner/father…to $344.00 per month…

Father's arrears were set at $18,146.18. The findings and recommendations were confirmed by April 2016 order. DHS requested a rehearing before the Juvenile Court Judge regarding the Magistrate's findings and recommendations.

In August 2016, the Juvenile Court entered an order sustaining allegations contained in a contempt petition filed against Father. The Juvenile Court held Father in contempt, stating that he had "the present ability to purge himself of contempt by making a partial payment on his arrearage in the amount of $500.00." The Juvenile Court ordered that Father "be confined to the Shelby County Jail for 30 days or until he purges himself of contempt by paying to the Clerk of Court the sum of $500.00."

In February 2019, after a long delay, the Juvenile Court heard DHS's request for a rehearing. In April 2019, the Juvenile Court entered its Order Resolving All Outstanding Matters. The Juvenile Court found, as pertinent:

1. The petitioner (James Frederick Roberts) was absent from Court. It was communicated to the Court by counsel for the respondent that the petitioner had given notice the day before that he had the flu. A clerk also received notice from Mr. Roberts that he stated he was ill and communicated this information to the Court. Counsel for respondent noted that he had provided documents to the petitioner the day before that the petitioner had asked to be exchanged. Soon after sending those documents to the petitioner via e-mail, the petitioner stated that he was ill, could not attend the hearing the next day, and that he wanted sufficient time to file a Motion. The respondent objected to a continuance based upon what appeared to be stalling on the part of the petitioner to file another document with the Court.
2. Upon reviewing the file, however, this Court finds that all outstanding matters have already been resolved.

***

4. Specifically, the Court finds that the Petitioner was seeking relief pursuant to Rule 60 of the Tennessee Rules of Civil Procedure. That relief was denied by Magistrate Nancy Percer Kessler as set forth in the October 6, 2015, Order of this Court. Upon a request from the Petitioner for a rehearing as to the denial of Rule 60 relief, this Court granted Petitioner a *de novo* hearing of those issues on January 26, 2016. The January 26, 2016, Order of

-5-

the Court reflects Petitioner's February 17, 2015, Motion and June 2, 2015, Motion were disposed of on that date and dismissed. There has not been a proper request for modification of child support by petitioner.

In May 2019, Father filed his Motion to Alter, Amend and/or New Trial in which he sought to set aside the Juvenile Court's April 2019 order pursuant to Tenn. R. Civ. P. 59.04 and 59.07. Father alleged that the Juvenile Court's February 22, 2013 order was void and that its subsequent orders were void, as well. On June 7, 2019, Father filed a premature notice of appeal to this Court.

On June 14, 2019, Father filed his Motion to Modify Child Support Order and Request for Evidentiary Hearing. Father asserted that he had "a new witness and new evidence that can prove the private school tuition has been paid by a trust agreement all along." Father asked the Juvenile Court to "modify the 2013 child support order and remove the deviation for private school tuition as it relates to the parties private agreement and force mother to abide by the original contract that she pay for private school."

On June 21, 2019, the Juvenile Court denied Father's Motion to Alter, Amend and/or New Trial. On July 16, 2019, the Magistrate heard Father's Motion to Modify Child Support Order and Request for Evidentiary Hearing. The Magistrate reinstated the March 2016 modification of child support, in effect overturning the Juvenile Court's judgment. In August 2019, Father filed his second Motion to Modify Child Support Order and Request for Evidentiary Hearing, which was scheduled for January 2020. On August 28, 2019, Mother filed a motion to set aside the Magistrate's July 2019 order, contending that it was made without proper notice to her; outside the court's jurisdiction in light of the appeal of the April 2019 order; and/or simply was a clerical error. Meanwhile, the case already was on appeal to this Court.

In September 2019, this Court entered an order remanding the case for consideration of Mother's motion to set aside the July 2019 order. As an issue is raised on appeal as to whether our remand of jurisdiction was completed, we quote from our order:
.
> On August 28, 2019 the Appellee, Dale Crafton Roberts, filed a Motion for Limited Remand to Address a Post-Appeal Order of the Trial Court. The Appellee argues that the trial court issued a post-appeal order on July 16, 2019 captioned "Findings and Recommendations of Magistrate" that either contained a clerical mistake or erroneously overturned the final judgment on appeal. The Appellee's motion for a limited remand fully complied with Tennessee Rule of Appellate Procedure 22. The Appellant filed a response in opposition on September 6, 2019.

The record has not yet been submitted in this appeal. Based on the limited documents before this Court, including the documents attached to the Appellee's verified motion, it appears to this Court that the Appellee has filed a motion to alter or amend the July 16, 2019 order with the trial court. Trial courts have broad authority to modify, alter, amend, or revoke an order prior to the entry of a final judgment. *See* Tennessee Rule of Civil Procedure 54.02 (an order or decision "is subject to revision at any time before the entry of the judgment."); *See also* Tennessee Rule of Civil Procedure 59.02. However,

> [i]n the event that a party waits to seek relief for more than thirty days after entry of a final judgment, the trial court cannot grant relief under Rule 59. *See* Tenn. R. Civ. P. 59.02. After this time, relief must be sought pursuant to Tennessee Rule of Civil Procedure 60.02. *See, e.g.*, *Campbell v. Archer*, 555 S.W.2d 110, 112 (Tenn. 1977) ("The function of [Rule 60.02] is to give relief from *final* judgments.)

*Discover Bank v. Morgan*, 363 S.W.3d 479, 489 (Tenn. 2012).

The issue of whether a trial court retains jurisdiction to address a Rule 60.02 motion once the notice of appeal has been filed is now settled: "the trial court 'has no jurisdiction to consider a [Rule 60] motion after a notice of appeal has been filed.'" *Born Again Church & Christian Outreach Ministries, Inc. v. Myler Church Bldg. Sys. of the Midsouth, Inc.*, 266 S.W.3d 421, 425 (Tenn. Ct. App. 2007) (*citing Spence v. Allstate Ins. Co.*, 883 S.W.2d 586, 595 (Tenn. 1994)). Furthermore, "[i]f a party wishes to seek relief from a judgment during that time, he has the option of applying to the appellate court for an order of remand. Absent an application for remand, the trial court's attempt to enter further orders addressing a party's Rule 60.02 motion is a nullity. Additionally, jurisdiction to modify a final judgment cannot be grounded upon waiver or agreement by the parties." *Born Again Church & Christian Outreach Ministries, Inc.*, at 425 (internal citations omitted).

In light of the controlling case law and the circumstances presented in the motion for limited remand, the Court **GRANTS** the motion to remand this appeal to the trial court for the limited purpose of entertaining the Appellee's Tennessee Rule of Civil Procedure 60.02 motion. The trial court is requested to deal with the motion expeditiously, within twenty (20) days if possible. **It is SO ORDERED**.

-7-

On October 3, 2019, the Magistrate granted Mother's motion to set aside the July 2019 order and denied Father's motion to modify. The Magistrate waived costs, stating that the July 2019 order was entered by mistake. On October 8, 2019, Father filed his Notice of Request for Hearing Before the Judge regarding the October 3, 2019 hearing. The record is silent as to whether Father's latest request for rehearing ever was addressed by the Juvenile Court.

## **Discussion**

Although not stated exactly as such, Father raises the following issues on appeal: 1) whether the Juvenile Court erred in not setting aside the original child support order barring the use of the child support guidelines and whether the subsequent orders also are void; 2) whether the Juvenile Court erred by assuming and exercising subject matter jurisdiction over the parties' private agreement modifying the original parenting plan by granting relief over private school tuition and whether this was a contract reserved for modification by the Circuit Court only; 3) whether the Juvenile Court erred in finding Father in contempt; 4) whether the Juvenile Court erred in dismissing Father's motion to modify child support and allowing Mother retroactive modification of child support; and, 5) whether the Juvenile Court erred in awarding Mother attorney's fees arising from the contempt hearing. DHS raises a separate issue of whether this appeal is ready to be decided as the record does not contain a ruling by the Juvenile Court on Father's latest motion for a rehearing. Lastly, Mother raises a separate issue of whether she should be awarded her attorney's fees incurred on appeal.

We first address DHS's issue of whether this appeal is ready to be decided. DHS submits that our remand of jurisdiction for the Juvenile Court to consider Mother's Rule 60.02 motion may not be finally concluded as there is no indication in the record that Father's Notice of Request for Hearing Before the Judge regarding the October 3, 2019 hearing before the Magistrate ever was addressed. In connection with this issue, Father filed a motion in this Court to supplement the record with "everything that transpired after the date of January 17, 2020 when the original record went up to the court of appeals" and "everything in the court jacket . . . including all subpoenas." Father also represents that he filed a motion below to strike his request for a rehearing and an order was entered to that effect.

We find no need to supplement the record. The record as it is currently constituted is sufficient for us to decide this appeal. With respect to DHS's position, we find that our instructions on remand were fulfilled. There is nothing to rehear. To the extent any ambiguity remains as to whether our remand of jurisdiction is concluded, we remove that

ambiguity by revoking our remand. We proceed with deciding this appeal.[1] Father's motion to supplement the record is denied as unnecessary.

We now address Father's issues, beginning with whether the Juvenile Court erred in not setting aside the original child support order barring the use of the child support guidelines and whether the subsequent orders also are void. Father, pro se, appears to be referencing the 2008 permanent parenting plan. The gist of Father's position throughout is that he does not want private school tuition factored into his child support calculation.

This Court has stated that under certain circumstances a child support order may be found void, or null, as against public policy. In one pertinent case, this Court found that a child support order, although deficient in certain respects, nevertheless was not void. As this Court discussed:

> A child support order is a judgment, enforceable in the same manner as any other judgment issued by a court of law. *See* Tenn. Code Ann. § 36-5-101(f)(1); *Nash v. Mulle*, 846 S.W.2d 803, 804 (Tenn. 1993). As relevant to this issue, the Tennessee Code provides, in pertinent part, as follows:
>
> > Any order for child support shall be a judgment entitled to be enforced as any other judgment of a court of this state, and shall be entitled to full faith and credit in this state and in any other state. Except as provided in subdivision (f)(6), such judgment shall not be subject to modification as to any time period or any amounts due prior to the date that an action for modification is filed[.]
>
> Tenn. Code Ann. § 36-5-101(f)(1). However, "agreements, incorporated in court decrees or otherwise, which relieve a natural or adoptive parent of his or her obligation to provide child support are void as against public policy[.]" *Witt v. Witt*, 929 S.W.2d 360, 363 (Tenn. Ct. App. 1996).
>
> Nevertheless, parents may enter into an agreement to set child support pursuant to Tennessee Code Annotated section 36-5-101(j), which provides as follows:
>
> > Nothing in this section shall be construed to prevent the affirmation, ratification and incorporation in a decree of an

---

[1] DHS raises an additional issue of whether Father waived his issues by failing to articulate them in such a way with respect to the order he appealed from as to enable our review. We find he did not. Father's issues as set out are amenable to our review.

agreement between the parties as to child support. In any such agreement, the parties must affirmatively acknowledge that no action by the parties shall be effective to reduce child support after the due date of each payment, and that they understand that court approval must be obtained before child support may be reduced, unless such payments are automatically reduced or terminated under the terms of the agreement.

"This subsection contemplates that the agreement: 1) will be in writing; 2) will be approved by a court; 3) will be incorporated into a court order; and 4) will contain the parties' acknowledgment that they may not alter the agreement without court approval." *Berryhill v. Rhodes*, 21 S.W.3d 188, 191 (Tenn. 2000) (footnote omitted).

While the 1999 order is deficient in some respects, it did not entirely relieve Father of his obligation to remit support when he retained the responsibility to maintain the cost of medical insurance or to remit payment for future medical expenses. *See Pennington v. Hennessee*, No. M2010-01873-COA-R3-CV, 2011 WL 2267478, at *2-3 (Tenn. Ct. App. June 8, 2011) (upholding a private agreement incorporated into a court order in which the father was required to remit payment for certain expenses in lieu of child support); *Woodard v. Woodard*, No. M2004-01981-COA-R3-CV, 2006 WL 1343209, at *4 (Tenn. Ct. App. May 16, 2006) (upholding a parenting plan in which the father was required to provide medical insurance and to reimburse the mother for half of the medical and dental costs in lieu of child support). There is also no evidence of an agreement not to seek support in the future should a substantial and material change in circumstances occur. To the contrary, the evidence reflects that Father remitted monthly payments to Mother until she filed a new petition to set child support. Additionally, the court's failure to issue a factual finding justifying the deviation from the child support guidelines does not render the 1999 order subject to attack when the time for direct appeal of the order passed. With these considerations in mind, we hold that the 1999 order was final and not void on its face and that the trial court's setting of retroactive child support was an impermissible modification of the 1999 order.

*State ex rel. Rogers v. Lewis*, No. W2015-01882-COA-R3-JV, 2016 WL 6134940, at *5 (Tenn. Ct. App. Oct. 21, 2016), *no appl. perm. appeal filed*.[2]

---

[2] None of the statutory language cited in *Lewis* has changed in any material way since the October 21, 2016 filing date of that opinion.

As was the case in *Lewis*, the child support order at issue herein did not entirely relieve either parent of their obligation to support their children, which is the crux of the basis for finding a child support order void on public policy grounds. Here, Father does not contend that the parties' children were left without provision as a result of the 2008 child support order, or indeed from any order pertaining to child support in this matter. Father's only objection stems from his disagreement with having to pay for private school tuition. That does not implicate any public policy concern of this state. In addition, nothing in the 2008 plan purported to bar the parties from seeking future modifications to the plan should circumstances warrant. Any deficiencies in the 2008 child support plan are not of the sort that would render it, a jurisdictionally valid court order, a nullity notwithstanding any particular misapplication of the Child Support Guidelines contained therein; direct appeal would have been the proper avenue for rectifying any alleged misapplications. Of course, the time for that has long since passed. None of the Circuit Court's orders addressing child support in 2007, 2008, or 2009 were appealed. We hold that the 2008 permanent parenting plan is not void as against public policy.

We next address whether the Juvenile Court erred by assuming and exercising subject matter jurisdiction over the parties' private agreement modifying the original parenting plan by granting relief over private school tuition and whether this was a contract reserved for modification by the Circuit Court only. In his brief, Father states that the Juvenile Court Magistrate interfered with his and Mother's right to contract with one another. Father states that he "invokes the right to contract doctrine and challenges any law or statute that gives a Juvenile Court Magistrate the right and/or subject matter jurisdiction to modify our original contract executed in Circuit Court." In response, DHS cites to Tenn. Code Ann. § 36-5-402 for the proposition that juvenile courts may, under certain circumstances, assume jurisdiction over child support matters:

> In lieu of requesting a magistrate, the presiding judge may, with the agreement of all judges having child support jurisdiction in a particular county or counties, enter into agreements with juvenile courts to set, enforce, and modify support orders as provided in this part. In the event such an agreement is entered into, the juvenile court shall have jurisdiction over all support cases in such county, except as may otherwise be provided in the agreement, any contrary law notwithstanding;

Tenn. Code Ann. § 36-5-402 (b)(2) (2017).

Per an April 2013 order, the Juvenile Court Magistrate found that "a Notice of Title IV-D Services and Notice of Transfer to the Juvenile Court of Memphis and Shelby County, Tennessee was filed on February 27, 2012, as required by law and further action to transfer jurisdiction to this Court to modify and enforce child support is not required."

-11-

*See Agreement Relative to Child Support Enforcement Between the Judges and Chancellors of the 30th Judicial District and the Judge of the Juvenile Court of Memphis and Shelby County, Tennessee*, TN 30th District Circuit Court App. 2. The Magistrate stated further that "this Court has administratively accepted jurisdiction of the Final Decree of Divorce of the Circuit Court of Shelby County, Tennessee, docket number CT-000343-07, for the purposes of enforcement and modification of child support." Further, this Court already has acknowledged the transfer. In December 2015, a panel of the Tennessee Court of Appeals issued an opinion in an appeal from the Circuit Court filed by Father in a dispute originating out of Mother's June 2010 Petition to Enjoin Father from Interfering with Babysitting Arrangements Made by Mother. This Court stated, in relevant part:

### Child Support

In addition to litigating the validity of the modified parenting plan, Father challenges the propriety of the original child support order that was entered by the trial court. We conclude that we are without jurisdiction to review the merits of this issue. As we previously noted, child support issues were transferred to Juvenile Court after this post-divorce litigation commenced.[3] Because Father has appealed an order of a court that does not currently have jurisdiction over child support, we conclude that we are without jurisdiction to entertain his grievances within the context of this appeal.

*Crafton v. Roberts*, No. W2015-00048-COA-R3-CV, 2015 WL 9466011, at *8-9 (Tenn. Ct. App. Dec. 28, 2015) (footnote in original but renumbered).

With regard to Father's right-to-contract argument, in *Kesser v. Kesser*, 201 S.W.3d 636, 642 (Tenn. 2006), *superseded by statute on other grounds as stated in Moore v. Moore*, 254 S.W.3d 357, 360 n. 5 (Tenn. 2007), our Supreme Court stated that any "agreement between parties 'with respect to,' 'dealing with,' or within 'the scope of' the legal duty to support their children during minority 'loses its contractual nature' when merged into a divorce decree." (quoting *Penland v. Penland*, 521 S.W.2d 222, 224-25 (Tenn. 1975)). Our Supreme Court stated further that "[b]ecause the provision merges into the decree, the child support obligation is subject to modification by the trial court." *Kesser*, 201 S.W.3d at 642. Our Supreme Court went on to explain that, in contrast, provisions extending a parent's child support obligation past a child's majority age remain contractual. *Id.* at 642-43. Father failed to contend with *Kesser* and its progeny as to why the child support provision at issue regarding tuition did not merge with the decree and

---

[3] The State of Tennessee filed a "Notice of Title IV–D Services and Notice of Transfer to the Juvenile Court of Memphis and Shelby County, Tennessee" on February 27, 2012. Moreover, we note that Father acknowledged on appeal that child support issues were transferred to Juvenile Court.

thus lose its contractual character. No such basis for finding so is apparent. Therefore, the tuition provision merged with the final decree of divorce and thereafter was subject to modification in the Juvenile Court where jurisdiction over child support matters lawfully was transferred. We hold that the Juvenile Court properly exercised subject matter jurisdiction over child support matters in this case.

Continuing our review of Father's issues, we next address whether the Juvenile Court erred in finding Father in contempt. DHS notes that the contempt order, filed August 3, 2016, "is wholly outside the line of orders leading up to Father's notice of appeal." Beyond that, Father's sole argument as to this issue is that a void order cannot be the basis for a finding of contempt. We already have found unpersuasive Father's contention that the 2008 child support order and all succeeding orders are void. This issue is without merit.

The next issue we address is whether the Juvenile Court erred in dismissing Father's motion to modify child support and allowing Mother retroactive modification of child support. In its April 2019 order, the Juvenile Court stated that "[t]here has not been a proper request for modification of child support by [Father]." Father contends that his June 2, 2015 "Amended Motion to Vacate Order and/or Modify" was, in fact, a proper request for modification of child support. Father points to (1) the word "modify" in the title of the motion and (2) that he states in the motion he was "laid off from Memphis Pool Supply due to cutbacks, which qualifies for a material change in circumstance." We have carefully reviewed Father's June 2015 motion. Father asserted therein that he was moving pursuant to Tenn. R. Civ. P. 15.01, Tenn. R. Civ. P. 60.01, Tenn. R. Civ. P. 60.02 (1), (2), (3) & (5), and the Americans with Disabilities Act. In his motion, Father alleged Mother committed fraud and perjured herself. What Father never did in his motion was ask for a modification of child support. Instead, Father prayed for the following:

A. That proper process issue and be served upon the Respondent.
B. For accommodations allowing equal access to the courts under Title II of the Americans with Disabilities Act of 1990 and **the right [to] place the child in public school.**
C. For protection from retaliation from the State AND Mother and her Attorneys as mandated by Federal law 28 C.F.R. 35.134(a)(b)(2003).
D. For such other relief, whether general, specific, declaratory, injunctive or damages to which Petitioner may be entitled.

(Emphasis in original). Based upon our review of Father's June 2015 motion, the Juvenile Court did not err in determining that Father did not make a proper request for modification of child support. We find no reversible error by the Juvenile Court as to this issue.

The last of Father's issues is whether the Juvenile Court erred in awarding Mother attorney's fees arising from the contempt hearing. Father does not cite to the record on this issue. Therefore, it is unclear which award of attorney's fees he is referring to. Father merely repeats his argument that void orders cannot be the basis for a finding of contempt. Father also invokes the American Rule, under which parties generally are responsible for their own attorney's fees. We already have addressed Father's void order argument and found it unavailing. This issue, too, is without merit.

As a final matter, Mother raises an issue of whether she should be awarded her attorney's fees incurred on appeal. Mother cites to Tenn. Code Ann. § 36-5-103(c), which provides:

> (c) The plaintiff spouse may recover from the defendant spouse, and the spouse or other person to whom the custody of the child, or children, is awarded may recover from the other spouse reasonable attorney fees incurred in enforcing any decree for alimony and/or child support, or in regard to any suit or action concerning the adjudication of the custody or the change of custody of any child, or children, of the parties, both upon the original divorce hearing and at any subsequent hearing, which fees may be fixed and allowed by the court, before whom such action or proceeding is pending, in the discretion of such court.

Tenn. Code Ann. § 36-5-103(c) (2017).[4]

This Court has stated: "A spouse who defends a petition to change an alimony or child support order is acting to enforce it. The statute does not distinguish between winners and losers, and while the courts have sometimes made that a factor … we do not think it is the determining factor. In each case the court should do what is equitable." *Duke v. Duke*, Nos. M2001-00080-COA-R3-CV, M2002-00026-COA-R3-CV, 2003 WL 113401, at *5 (Tenn. Ct. App. Jan. 14, 2003), *no appl. perm. appeal filed* (internal citations omitted). In addition, Mother submits as a basis for an award of attorney's fees that Father's appeal is frivolous.

While Father did not prevail on any issue he raised, we do not find his appeal so utterly devoid of merit as to justify deeming his appeal frivolous. Further, we are unconvinced that an award of attorney's fees would be equitable under the specific facts of this long-running case. Based upon the foregoing, and in the exercise of our discretion, we

---

[4] Tenn. Code Ann. § 36-5-103(c) was amended in 2018. However, the amendment applies only to actions commenced on or after July 1, 2018. *See* 2018 Tenn. Laws Pub. Ch. 905 (H.B. 2526). This present action commenced well before July 1, 2018. Thus, the amendment does not apply.

decline Mother's request for attorney's fees incurred on appeal. The judgment of the Juvenile Court is affirmed in all respects.

## **Conclusion**

The judgment of the Juvenile Court is affirmed, and this cause is remanded to the Juvenile Court for collection of the costs below. The costs on appeal are assessed against the Appellant, James Frederick Roberts, and his surety, if any.

<u>s/ D. Michael Swiney</u>
D. MICHAEL SWINEY, CHIEF JUDGE